UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. CARLSEN,

    Plaintiff,

v.                                     Case No: 6:18-cv-507-Orl-DNF

NANCY BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER

Plaintiff, Christopher E. Carlsen, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I. Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful

employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record

regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on April 21, 2014, alleging a disability onset date of July 8, 2009. (Tr. 154). Plaintiff's claim was denied initially and upon reconsideration. (Tr. 93-101). Plaintiff filed a request for hearing and an administrative hearing was held by Administrative Law Judge Sharda Singh ("the ALJ") on May 9, 2016. (Tr. 34-78). On August 1, 2016, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 17-28). Plaintiff requested review of the ALJ's decision, but the Appeals Council denied the request for review on January 30, 2018. (Tr. 1-6). Plaintiff initiated this action by Complaint (Doc. 1) on April 3, 2018.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 8, 2009, the alleged onset date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairment: bilateral shoulder pain, carpal tunnel syndrome, and bipolar disorder. (Tr. 19). At step three, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except he: could lift 20 pounds occasionally and 10 pounds frequently; could stand/walk six hours and sit six hours during the course of an eight-hour workday; could not perform overhead reaching with the left upper extremity; was limited to frequent fine and gross hand manipulation bilaterally; could perform frequent pushing and pulling with the left upper extremity; could understand, remember, and carry out simple, routine, and repetitive, non-complex tasks.

(Tr. 21). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a heavy truck driver, construction worker II, and operating engineer. (Tr. 27, 29).

At step five, relying on the testimony of a vocational expert, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 29). Specifically, the ALJ found that Plaintiff could perform such jobs as mail clerk, counter clerk, and usher. (Tr. 28). The ALJ concluded that Plaintiff was not under a disability from July 8, 2009, the alleged onset date, through December 31, 2014, the date last insured. (Tr. 28).

## II.     Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by failing to properly evaluate Plaintiff's mental impairment; (2) whether the ALJ erred by failing to properly evaluate Plaintiff's treating and examining physicians' opinions; and (3) whether substantial evidence supports the ALJ's credibility finding. The Court begins with Plaintiff's first raised issue.

Plaintiff argues that the ALJ erred by failing to acknowledge or consider his diagnoses of ADHD, anxiety disorder, and major depression with anxious features in evaluating Plaintiff's mental impairments. (Doc. 25 p. 21). Further, Plaintiff argues that the mental health evidence

demonstrates that Plaintiff had greater limitation than determined by the ALJ in her RFC. (Doc. 25 p. 21). In response, Defendant argues that diagnoses do not establish work-related limitations and that the substantial evidence supports the ALJ's assessment of Plaintiff's mental RFC.

Before addressing the parties' arguments, a review of the record is in order. The record shows that Plaintiff was evaluated at Port Jervis Mental Health Clinic of the Orange County Department of Mental Health by Bruce Coopersmith, LCSW on March 10, 2009. (Tr. 333). Plaintiff reported snapping at people for no reason and drinking to calm down. He had quit alcohol 7 years ago. (Tr. 333). He appeared disheveled. He was cooperative and fully oriented. His mood was anxious and depressed. (Tr. 337). His thoughts were relevant and goal directed. His memory and concentration were adequate. (Tr. 337). He had "little to no insight." (Tr. 337). On March 10, 2009, Mr. Coopersmith indicated Plaintiff's mood was mildly depressed, productivity was rated as "overabundance of ideas" and concentration was mildly impaired. (R 341). His social judgement was mildly impaired. (Tr. 342). His speech was described as somewhat rambling. (Tr. 342). On March 10, 2009, Mr. Coopersmith diagnosed Bipolar Disorder most recent episode unspecified, Attention Deficit Hyperactivity Disorder; and unspecified Anxiety Disorder. (Tr. 395). His GAF was rated at 51-60, indicating moderate symptoms. (Tr. 395).

On March 24, 2009, Plaintiff underwent a psychiatric evaluation at the same facility by Martha Thomson, Psychiatric Mental Health Nurse Practitioner ("NP"), Board Certified in Psychiatry. (Tr. 339, 402). On examination, Plaintiff kept asking her to repeat questions. (Tr. 339). He indicated that he was having relationship problems due to his mental issues. (Tr. 339). NP Thomson recommended a psychiatric evaluation and follow up assessment, mood stabilization, and therapy. (Tr. 340). On December 30, 2013, NP Thomson diagnosed Plaintiff with Bipolar

Disorder NOS, Attention Deficit Hyperactivity Disorder NOS; and Anxiety Disorder, NOS. (Tr. 348). His GAF was rated at 51-60, or moderate symptoms or difficulty in functioning. (Tr. 350).

On July 14, 2014, Social Security sent Plaintiff for a psychological consultative examination with Dr. Alan Dubro, Ph.D. (Tr. 376). Dr. Dubro stated that Plaintiff had been treated since August of 2009 at the Orange County Department of Mental Health and was seen biweekly for individual psychotherapy and once per month for psychiatric medication management. (Tr. 376). He was taking Xanax, Zoloft, Wellbutrin and Topamax for his mental issues. (Tr. 376). Plaintiff reported that he had trouble settling down to sleep at night. (Tr. 376). Because of his inability to perform his usual activities due to physical problems, his mood had become markedly depressed and he was socially withdrawn. He lacked motivation and felt fatigued a great deal of the time. (Tr. 377). On examination, Plaintiff slouched and his motor behavior was sluggish. (Tr. 377). He did not speak spontaneously, displayed concentration difficulties, and questions frequently needed to be repeated. (Tr. 378). His affect was blunted and his mood was depressed. (R 378). His attention and concentration were impaired secondary to distractibility associated with a depressed and anxious mood, which was evidenced when he was asked to perform tasks. (Tr. 378). With repetition, he could perform mental arithmetic, but not arithmetic work problems. (Tr. 378). His recent and remote memory were impaired secondary to distractibility associated with a depressed and anxious mood. (Tr. 378). Dr. Dubro found that Plaintiff could understand directions, but displayed moderate difficulty in his ability to attend, remember, and follow directions. His attention span and concentration were moderately impaired. Plaintiff would experience moderate difficulty in learning new tasks. He would have moderate difficulty in his ability to perform daily tasks independently and on a regular basis. He would have marked difficulty in the ability to perform complex tasks. He would also have marked difficulty in his ability to interact with others

and regularly attend to a routine and maintain a schedule. (Tr. 379). He indicated that Plaintiff's psychiatric problems significantly interfered with his ability to function on a day to day basis. (Tr. 379). Dr. Dubro diagnosed Major Depression with Anxious Features with a guarded prognosis. (Tr. 379).

On May 2, 2016, NP Thomson completed a questionnaire. (Tr. 397). She stated that Plaintiff had treated at the Orange County Department of Mental Health in Port Jarvus since 2009. He was seen every 3-4 weeks for medication management and psychiatric evaluation. (Tr. 397). His diagnosis was Bipolar II, Anxiety Disorder, and Attention Deficit Hyperactivity Disorder. His GAF was 57. (Tr. 397). His medications were Wellbutrin, Zoloft, Topamax and Xanax. (Tr. 397). She described her clinic findings on mental status examination as follows: "Patient has poor frustration tolerance especially since his injury at work and chronic pain in left arm, both shoulders, and neck. He has persistent chronic anxiety, irritability and depression, which are moderate." (Tr. 397). She rated his work abilities such that he would be unable to meet competitive standards in the following areas: sustain ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; and be aware of normal hazards and take appropriate precautions. (Tr. 399). She also rated him as unable to meet competitive standards in performing skilled or semiskilled work. (Tr. 400). She felt that he could not interact appropriately with the general public or maintain socially appropriate behavior. She stated that pain intensified Plaintiff's depression, anxiety, and irritability and his mental health problems

intensified his pain, especially when stressed. (Tr. 400). She rated him as having marked difficulties in maintaining social functioning, and moderate limitations in daily activities, concentration, persistence and pace, as well as episodes of decompensation. (Tr. 401). She indicated that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. (Tr. 401). She opined that he would miss more than four days of work per months. (Tr. 402).

In determining whether Plaintiff can return to his past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e). An ALJ must consider all of a claimant's mental impairments which are sufficiently severe in combination with all of a claimant's impairments. *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1256 (M.D. Fla. 2005).

In this case, the Court finds that the ALJ erred by failing to properly evaluate Plaintiff's mental impairment. As the summary of the record above makes clear, every medical source to offer an opinion as to Plaintiff's mental functioning determined he was more limited than determined by the ALJ. While the ALJ addressed and provided reasons for not giving greater weight to the opinions of consultative examiner Dr. Dubro and NP Thomson, his reasoning is not supported by substantial evidence. As to the opinion of NP Thomson, the ALJ explained that her opinion was not supported by the medical evidence and her own mental status examination findings and GAF score assessment. (Tr. 27). The ALJ, however, failed to provide any explanation with specific citation to the record, instead relying on this conclusory determination.

Furthermore, as to the opinions of Dr. Dubro, the ALJ rejected them on the basis that his findings show "a much more restricted level of functioning than is reflected elsewhere in the

overall record, including in his own reported activities of daily living to a different consultative examiner just a month earlier (Exh.4F)." (Tr. 26). These daily activities include living part-time with his 12-year-old daughter, cooking, cleaning, doing laundry, shopping, going out into the yard, working on his car, watching television and listening to the radio. (Tr. 371). It is unclear to the Court, however, how these seemingly mundane daily activities undermine Dr. Dubro's opinion.

The Court rejects Defendant's argument that the opinion of "Dr. Marks" constitutes substantial evidence supporting the ALJ's consideration of Plaintiff's mental impairment. The record shows that a "Disability Determination Explanation" form was completed on August 8, 2014, by an individual who signed his or her name as "M. Marks (38)" under a signature block which provided "MC/PC or SDM Signature. "(Tr. 87). There is no indication of M. Marks' credentials and the ALJ notably does not refer to this source as a physician, but only as a psychological consultant. The form contains a section entitled "Mental Residual Functional Capacity Assessment" and provides that Plaintiff is moderately limited in the ability to understand and remember detailed instructions, moderately limited in the ability to carry out detailed instructions, moderately limited in the ability to maintain attention and concentration for extended periods of time, moderately limited in the ability to respond appropriately to changes in the work setting,. (Tr. 86). The form further indicates that Plaintiff is able to understand and remember instructions and work procedures, is able to maintain adequate attention and concentration to complete work like procedures and sustain a routine, is able to relate and respond in an appropriate manner, and can adapt to changes in a routine work setting and can use appropriate judgment to make work-related decisions. (Tr. 87). Given the record's lack of clarity as to M. Marks' credentials, the Court cannot find that his or her opinion constitutes substantial evidence supporting the ALJ's mental limitation findings.

Finally, the Court notes that despite being diagnosed with ADHD, anxiety, and depression, the ALJ fails to acknowledge or discuss these diagnoses in considering Plaintiff's mental limitations. While diagnoses themselves do not establish a determinable impairment, the ALJ's failure to acknowledge these conditions is further evidence that the mental limitation finding is not supported by substantial evidence.

On remand, the ALJ shall re-evaluate Plaintiff's mental limitations, specify with particularity the weight assigned to the opinions as to Plaintiff's mental functioning, acknowledge each mental diagnosis, and clarify the credentials of M. Marks.

As the ALJ's re-analysis of Plaintiff's mental functioning may alter his ultimate RFC determination, the Court defers from addressing the other issues raised by Plaintiff at this time.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 1, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties